Daniel S. SINGER, Plaintiff–Appellant,

v.

FULTON COUNTY SHERIFF, Stewart's Ice Cream Co., Inc., its agents and employs, Raymond Shuler, individually, Andrea Nicollela, individually, Fulton County Sheriff's Department, its agents and its employs, Village of Northville, County of Fulton, its agents and employs, Sheldon Ginter, individually and as Mayor of Village of Northville, James Groff, individually, as deputy sheriff, and as Village of Northville Village Board Member, James Hillman, individually and as deputy sheriff, Deputy Hillier, individually and as deputy sheriff, Martin Kested, individually and as deputy sheriff, Defendants–Appellees.

No. 1501, Docket 94–9093.

United States Court of Appeals, Second Circuit.

Argued May 5, 1995.

Decided Aug. 9, 1995.

Martin J. Kehoe, III, Albany, NY, for plaintiff-appellant.

James E. Conway, Albany, NY, for defendants-appellees Fulton County Sheriff's Dept., Fulton County Sheriff, James Hillman, Deputy Hillier and Martin Kested.

Damon J. Stewart, Albany, NY (Dreyer, Boyajian & Tuttle, of counsel) for defendants-appellees Village of Northville, Sheldon Ginter and James Groff.

Belinda A. Wagner, Albany, NY, for defendants-appellees Stewart's Ice Cream Co., Inc., Andrea Nicollela and Raymond Shuler.

Before CARDAMONE, MINER, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Plaintiff-appellant Daniel S. Singer brought this civil rights action, pursuant to 42 U.S.C. § 1983, in the United States District Court for the Northern District of New York, alleging that the defendants violated his constitutional rights when they arrested, charged and prosecuted him for petit larceny—a charge that was ultimately dismissed "in the interests of justice." The case was referred to United States Magistrate Judge David N. Hurd, who granted motions by some defendants for summary judgment on all claims, dismissed the complaint against the remaining defendants *sua sponte*, denied motions for sanctions and attorney's fees, and entered final judgment. We affirm.

## Background

Daniel S. Singer, a resident of the Village of Northville, New York, is employed as a ranger by the New York State Department of Environmental Conservation. In his spare time, Singer is active as a maverick in local politics.

Northville's Mayor reports to, and takes direction from, the Village Board of Trustees which, in turn, conducts periodic town meetings at which residents of the Village come together to discuss and debate issues of Village governance. Early in 1991, the Village Board of Trustees proposed that the Village adopt a zoning ordinance that would for the first time regulate the development and use of private property in the Village. Opposition to zoning regulation coalesced in a loosely-organized movement that called itself the "Common Sense Group." Singer, one of the more outspoken members of the Group, circulated a petition denouncing the proposed ordinance and found 512 signatories (around 75% of the eligible voters) among his fellow villagers. Nevertheless, the Village Board adopted the zoning ordinance. This action, taken some time around late winter or early spring of 1991, apparently sharpened Singer's political resolve.

In June 1991, Singer published the first issue of *The Northville Free Press,* a newsletter that provided a forum for Singer to attack the Village government. In this, he was joined by others who shared his views. *The Northville Free Press* was widely distributed to Village residents, and was made available free of charge at (among other places) Stewart's Ice Cream Shop. The issues furnished in the appendix on appeal carry editorials, letters to the editor, and cartoons lampooning various Village officials. The first issue was dedicated primarily to the zoning controversy. Subsequent issues focused on various topics of local interest, including taxation and expenditures by the Village Board, the purchase by the police department of a $16,000 high-performance cruiser, and the contention that many of the Village's police officers and other officials tended to spend an inordinate amount of time

congregating at the Stewart's Shop.[1] One cartoon, for example, depicts an obese policeman straddling the roof of a new police car, demanding his turn to drive; a doughnut box is on the ground nearby. Virtually all the issues implore Northville residents to regis-ter to vote and to participate in local politics. Singer was able to sell advertising space to local businesses, which helped to defray the publication costs. According to affidavits submitted by Singer, several Village officials expressed dismay at Singer's ability to influence public opinion, and said that they would be happier without *The Northville Free Press.*

Early in the afternoon of October 20, 1991, Singer received a telephone call requesting him to pick up some provisions and meet a search party that was forming to look for a missing hunter. Around 2:15 PM, he donned his ranger's uniform and drove to the Stewart's Shop, where he picked out several packages of luncheon meats and a loaf of bread. Singer told the clerk, who was busy with other customers, that he needed the supplies for an emergency search and rescue operation and asked if he could come back later to pay for the provisions. Singer claims that the clerk consented; the clerk denies that he consented. Both agree that Singer handed the clerk a list of the items he was taking, along with their marked prices, and told him he would return later that day to pay for them.[2] He then left the store.

Around 3:00 PM, the store clerk, Raymond Shuler, telephoned the store manager, Andrea Nicollela, and informed her that Singer had left the store without paying for $11.55 worth of merchandise. Galvanized into action, Nicollela hurried to the Shop, where (according to Singer's 10(j) statement and the affidavit of Singer's wife) Nicollela conferred with Deputy Sheriff and Village Trustee James Groff.

At around 5:00 PM, Deputy Sheriff Martin Kested arrived at the Stewart's Shop in response to a call from a person or persons unknown reporting the alleged theft. After interviewing Shuler and Nicollela in a back room, Kested had Shuler fill out and sign an information setting forth his allegation that Singer had stolen the packaged sandwich meats. Shuler also completed and signed a supporting deposition to back up the information. On the basis of these documents, plus whatever additional information was supplied by the witnesses, Kested drove out to Singer's home. Singer had arrived home shortly before Kested arrived, and greeted Kested at the door. Kested informed Singer of his mission, elicited Singer's version of the incident, and arrested Singer on the charge of petit larceny.

After Singer was arraigned at the Northampton Town Court, he was released on his own recognizance. The next day, after conferring with her superiors, Nicollela completed and signed a supporting deposition which set forth her knowledge of the incident at the Shop, but which added that she had asked William Gritsavage, the prosecuting attorney, to drop the charges against Singer because the Stewart's company did not want to engender ill feelings with the Department of Environmental Conservation. For reasons not disclosed by the record, the prosecution went forward in spite of this request.

On August 12, 1992, the matter was transferred to the Gloversville City Court, where, on November 19, 1992, City Court Judge Mario Papa dismissed the charge of petit larceny against Singer. The certificate of disposition does not note the basis for the dismissal, but a transcript of the November 19 status hearing reflects that the judge dismissed the charges in "the interests of justice," because the prosecution was unable to locate its primary witness, Raymond Shuler, and therefore could not assure the court the case could be tried on the scheduled date.

Singer filed a complaint on December 3, 1992, in the Northern District of New York, alleging four causes of action: (1) false arrest, under § 1983; (2) malicious prosecution, under § 1983; (3) conspiracy to violate his

---

**1.** The Village does not have a full-time police force. It employs off-duty deputy sheriffs from the Fulton County Sheriff's Department on a part-time basis.

**2.** The items taken were: one loaf of Stewart's Italian Bread, two packages of Oscar Mayer Ham, one package of sliced american cheese, and one stick of pepperoni.

civil rights, under § 1983; and (4) a supplemental state claim for malicious prosecution. The complaint alleges generally that all the above acts were in violation of his rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution.

By consent of the parties and pursuant to 28 U.S.C. § 636(c), the matter was referred to Magistrate Judge David N. Hurd. Motions were filed and, in an order dated October 4, 1994, the court: (1) granted motions for summary judgment filed by the Village of Northville, Sheldon Ginter (mayor of Northville), James Groff, the Fulton County Sheriff's Department, the Fulton County Sheriff, Deputy James Hillman, Deputy Hillier, and Deputy Martin Kested; (2) dismissed the complaint, *sua sponte*, against Stewart's Ice Cream Co., Raymond Shuler, and Andrea Nicollela; (3) denied motions by the Village of Northville, Sheldon Ginter, and James Groff for sanctions against Singer; (4) denied the motion by Singer for sanctions against the various defendants; and (5) denied motions by various parties for attorney's fees. Singer now appeals each aspect of the judgment of the district court. After careful consideration of all the arguments raised by the parties, we affirm.

**Discussion**

The district court dismissed the complaint on a variety of grounds, all of which are contested by Singer. We confine our discussion to those issues which have at least some merit. We review the grant of a motion for summary judgment *de novo*, drawing all inferences in the light most favorable to the non-moving party. *Viola v. Philips Medical Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir.1994). Our standard of review of the district court's decision not to exercise jurisdiction over a pendent state claim is that of abuse of discretion. *See Greene v. Town of Blooming Grove*, 935 F.2d 507, 510 (2d Cir.), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991).

**A. Malicious Prosecution.**

The § 1983 claim that is premised on malicious prosecution was dismissed on two apparently alternative grounds. The district

court observed that the Supreme Court's recent opinion in *Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), forecloses the assertion of malicious prosecution claims under § 1983. Before stating that conclusion, however, the district court analyzed Singer's § 1983 malicious prosecution claim under substantive state common law standards, in accordance with the generally applicable law of this Circuit. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1153–1155 (2d Cir.1995); *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980) (analyzing § 1983 malicious prosecution claim under state common law principles), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The district court concluded that Singer failed to establish "[o]ne of the essential elements of a prosecution for false arrest, false imprisonment, and/or malicious prosecution[:] ... that the prior criminal action complained of must be terminated in plaintiff's favor...."

*1. Albright.*

In concluding that *Albright* forecloses the use of § 1983 to state a federal claim for malicious prosecution, the district court relied on the First Circuit's conclusion in *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40 (1st Cir.1994), that "*Albright* would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983...." 25 F.3d at 42. We agree that, under *Albright*, the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution; however, *Albright* does not bar Singer from asserting a federal claim for malicious prosecution under the Fourth Amendment.

The plaintiff in *Albright* surrendered to the authorities after learning that a warrant for his arrest had been issued, and was released on bail subject to the usual restrictions on travel. The case was later dismissed on the ground that the charge—selling a "look-alike" substance as cocaine—did not state an offense under Illinois law. *Albright*, —— U.S. at —— and n. 1, 114 S.Ct. at 810 and n. 1. Albright brought suit under § 1983, alleging that the arresting officer had

"deprived [Albright] of substantive due process under the Fourteenth Amendment—his 'liberty interest'—to be free from criminal prosecution except upon probable cause." *Id.* at ————, 114 S.Ct. at 810–811. The district court concluded that Albright failed to state a claim under § 1983, and the Seventh Circuit affirmed the dismissal, holding "that prosecution without probable cause is a constitutional tort ... only if accompanied by incarceration or loss of employment or some other 'palpable consequenc[e].'" *Id.* at ————, 114 S.Ct. at 811 (alteration in original). The Supreme Court affirmed on the somewhat different ground that "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claims must be judged." *Id.*

Chief Justice Rehnquist's plurality opinion in *Albright* (joined by Justices O'Connor, Scalia and Ginsburg) explained that, because § 1983 " 'is not itself a source of substantive rights,' ... [t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* at ————, 114 S.Ct. at 811–812 (quoting *Baker v. McCollan*, 443 U.S. 137, 140 and 144 n. 3, 99 S.Ct. 2689, 2692 and 2694 n. 3, 61 L.Ed.2d 433 (1979), and *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989)). However, " 'the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.' The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right

to bodily integrity." *Id.* at ————, 114 S.Ct. at 812 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). Therefore, so long as "a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Id.* at ————, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). The plurality opinion decided that the Fourth Amendment is the proper source of constitutional protection for claims, such as malicious prosecution, that implicate a person's liberty interest in respect of criminal prosecutions (and, in particular, one's pretrial liberty): "We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." *Id.* Because the petitioner in *Albright* did not raise a Fourth Amendment claim, however, the Court refused to reach the question of whether the complained-of conduct actually violated the Fourth Amendment.

 Although the concurring Justices published four separate opinions, there are at least two common propositions in all five opinions: (1) a claim of malicious prosecution may not be brought as a substantive due process claim; and (2) the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest.[3] The extent of those rights, however, remains to be defined by the Court.[4]

---

**3.** *See* —— U.S. at ————, 114 S.Ct. at 811 (Rehnquist, C.J., announcing judgment of Court) ("We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claims must be judged."); *id.* at ————, 114 S.Ct. at at 814 (Scalia, J., concurring) (concluding that criminal procedural requirements of Bill of Rights "are not to be supplemented through the device of 'substantive due process' "); *id.* at ————, 114 S.Ct. at 817 (Ginsburg, J., concurring) ("I conclude that the Fourth Amendment ... proscribes the police misconduct Albright alleges. I therefore resist in this case the plea 'to break new ground,' in a field—substantive due process—that 'has at times been a treacherous [one] for this Court.' ") (citations omitted); *id.* (Kennedy and Thomas, *JJ.,* concurring) ("an allegation of arrest without probable

cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process"); *id.* at ————, 114 S.Ct. at 821 (Souter, *J.,* concurring).

**4.** *Compare* —— U.S. at ————, 114 S.Ct. at 814 (Scalia, J., concurring) ("I think it unlikely that the procedures constitutionally 'due,' with regard to an arrest, consist of anything more than what the Fourth Amendment specifies...."); *with id.* at ————, 114 S.Ct. at 815–16 (Ginsburg, J., concurring) (concluding that "a defendant released pretrial is ... still 'seized' in the constitutionally relevant *sense*" and remains "effectively 'seized' for trial so long as the prosecution against him remain[s] pending"); *see also id.* at ————, 114 S.Ct. at 819 (Kennedy and Thomas, *JJ.,* concur-

Singer's complaint states that, in causing him to be prosecuted, defendants violated Singer's Fourth Amendment right to be free from unreasonable seizure of his person. In respect of pleading, *Albright* requires nothing more. (Whether Singer's prosecution deprived him of liberty to a sufficient extent to constitute a "seizure" for Fourth Amendment purposes is largely a question of fact—one which the district court did not need to reach in this case.) That Singer has adequately pleaded a § 1983 claim for malicious prosecution does not, however, end the matter.

Once a plaintiff presents a claim of malicious prosecution under § 1983, the court must engage in two inquiries: whether the defendant's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment. We consider these in reverse order.

### 2. *Constitutional Injury*

Section 1983 "was intended to '[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1046, 55 L.Ed.2d 252 (1978) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)) (alteration in original). The "appropriate starting point" of the inquiry is the common law of torts, but "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question...." *Id.* at 258–259, 98 S.Ct. at 1049–1050. The Supreme Court has recognized that, "[i]n some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitu-

tional right," *id.* at 258, 98 S.Ct. at 1049; still, it is only the violation of the constitutional right that is actionable and compensable under § 1983. "The validity of the claim must [therefore] be judged by reference to the specific constitutional standard which governs that right...." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

■ The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.,* the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of "seizure."[5] This requirement is necessary to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions— *i.e.,* a harm cognizable under § 1983. The Supreme Court has "said that the accused is not 'entitled to judicial oversight or review of the decision to prosecute.'" *Albright,* —— U.S. at ——, 114 S.Ct. at 813 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 118–119, 95 S.Ct. 854, 865–866, 43 L.Ed.2d 54 (1975)). That pronouncement is consonant with the principle that "the abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). Rather, an award of "damages must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation....'" *Id.* at 309, 106 S.Ct. at 2544 (quoting *Carey v. Piphus,* 435 U.S. at 265, 98 S.Ct. at 1053) (alteration in original).

■ To maintain a § 1983 claim for malicious prosecution under the Fourth Amend-

---

ring) (noting that, under the reasoning of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), "if a State did not provide a tort remedy for malicious prosecution, there would be force to the argument that the malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under § 1983"); *id.* at ————, 114 S.Ct. at 820–22 (Souter, *J.,* concurring) (concluding that the question of whether the Fourth Amendment or Due Process

provides the proper constitutional "peg" for a § 1983 claim depends on when, and to what extent, the plaintiff has been deprived of liberty).

5. It is theoretically possible, as discussed below, for a plaintiff to premise a malicious prosecution claim on some other constitutional right. Where that is the case, it will be the standard governing that right that will determine whether there has been a constitutional violation.

ment, the deprivation of liberty—the seizure—must have been effected "pursuant to legal process." *Heck v. Humphrey*, —— U.S. ——, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994). "The essence of malicious prosecution is the perversion of proper legal procedures." *Broughton v. State of New York*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Ordinarily, this "legal process" will be either in the form of a warrant, in which case the arrest itself may constitute the seizure, *see id.* at 94, 335 N.E.2d at 314–315 ("When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution."), or a subsequent arraignment, in which case any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement. In this case, Singer's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not "pursuant to legal process." *See Heck*, —— U.S. at ——, 114 S.Ct. at 2371; *see also Broughton*, 373 N.Y.S.2d at 94, 335 N.E.2d at 314 ("The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant."). Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest (addressed *infra*), *see Broughton*, 373 N.Y.S.2d at 94, 335 N.E.2d at 315 ("Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful...."), while the tort of malicious prosecution will implicate post-ar-raignment deprivations of liberty. *See Raschid v. News Syndicate Co.*, 239 A.D. 289, 267 N.Y.S. 221, 225 (1st Dep't 1933) ("A charge and an arrest do not amount to a prosecution. Th[e] action [of malicious prosecution] lies only when a legal prosecution, a judicial proceeding, has been maliciously, and without probable cause, instituted against the plaintiff, and has been terminated in the plaintiff's favor.") (internal quotations and citation omitted), *aff'd*, 265 N.Y. 1, 191 N.E. 713 (1934) (with inapplicable modification); *see also* W. Keeton et al., Prosser and Keeton on the Law of Torts § 119, at 888 (5th ed. 1984) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim...."). Therefore, to successfully pursue a § 1983 claim of malicious prosecution in violation of his Fourth Amendment rights, Singer must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation. *See Stachura*, 477 U.S. at 309, 106 S.Ct. at 2544.

Assuming, *arguendo*, that Singer's release after arraignment may constitute a "seizure," [6] nothing in the record indicates that Singer was subjected to any restriction on his ability to travel freely; indeed, there is nothing to indicate that he was required to post any bail. Because the district court had no occasion to reach this issue, we do not have the benefit of factual findings concerning any deprivation of liberty suffered by Singer as a result of the charges lodged against him. We therefore do not decide whether there was a seizure in this case sufficient to implicate the Fourth Amendment.

---

6. Most Fourth Amendment cases in respect of restraints on personal liberty have focused on the investigatory detention, arrest or pretrial detention of a suspected criminal. *See, e.g., Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In *Albright*, however, the petitioner had voluntarily submitted to the arrest process, and was released after posting bail. Because he did not assert a Fourth Amendment claim, the plurality refused to decide whether subjecting oneself to the restrictions that usually attach to release on bail constitutes a "seizure" under the Fourth Amendment. *See Albright*, —— U.S. at ——, 114 S.Ct. at 813. *But see id.* at ——·——, 114 S.Ct. at 815–816 (Ginsburg, *J.*, concurring) (concluding that a party is "seized" in a constitutional sense for so long as a prosecution is pending).

### 3. *Favorable Termination.*

██ " '[O]ver the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.' " *Heck v. Humphrey*, — U.S. —, —, 114 S.Ct. 2364, 2370, 129 L.Ed.2d 383 (1994) (quoting *Carey v. Piphus*, 435 U.S. 247, 257–58, 98 S.Ct. 1042, 1049–1050, 55 L.Ed.2d 252 (1978)).

At common law, "an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor." *Singleton*, 632 F.2d at 193; *see also Heck*, — U.S. at —, 114 S.Ct. at 2371 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."); Prosser and Keeton § 119, at 874–75; Restatement (Second) of Torts § 653(b) (1977). The district court found that the petit larceny charge against Singer had been dismissed "in the interests of justice" by the state court. Although the certificate of dismissal does not state the basis for dismissal, the transcript of hearing in state court reflects that the judge dismissed the case in the interests of justice. "[A]s a matter of law, [a dismissal in the interests of justice] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir.1992).[7] Therefore, under the traditional common law analysis used by this Court in such actions. Singer could not establish one of the elements of his malicious prosecution claim. The district court so concluded, and dismissed that claim; we affirm.

### B. False Arrest

The district court dismissed the false arrest claim on three grounds: that there was no favorable termination of the proceeding against Singer; that there was probable cause for the arrest; and that the arresting officer enjoyed qualified immunity. We affirm on the ground that there was probable cause for the arrest, a conclusion that subsumes the issue of immunity.

### 1. *Favorable Termination.*

██ The common law tort of false arrest is a species of false imprisonment, an action "derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement." *Broughton*, 373 N.Y.S.2d at 93, 335 N.E.2d at 314. This claim is distinct from one of malicious prosecution: "each protects a different personal interest and is composed of different elements." *Id.* Under New York law, the elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Id.; see also Hygh*, 961 F.2d at 366 ("The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law.") (internal quotations and citations omitted). A favorable termination of the proceedings is not an element of this tort. We affirm the dismissal of this claim nevertheless on the district court's alternative ground that there was probable cause for the arrest.

### 2. *Probable Cause.*

██ There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.

---

7. *Cf. Pinaud*, 52 F.3d at 1154–1155, citing the First Department's opinion in *Hankins v. The Great Atlantic & Pacific Tea Co.*, 208 A.D.2d 111, 622 N.Y.S.2d 678 (1st Dep't 1995), which leaves the door open to considering specific facts giving rise to the dismissal in the interest of justice. In *Pinaud*, we viewed the operative circumstances of that case—that the defendant had served his sentence—as militating against a conclusion that the dismissal was merits-based. In any event, this Court has already held that the New York Court of Appeals does not consider a dismissal in the interest of justice to be a favorable termination as a matter of law. *See Hygh*, 961 F.2d at 368. We see no reason to revisit that issue in this case.

1994). Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989)).

The district court made the following factual findings: Deputy Kested, upon his arrival at the Stewart's Shop, "was advised by Shuler as a clerk ... and his supervisor, Nicollela, that plaintiff had taken items with a value of $11.55 from the store without paying for same." In addition, Shuler signed a criminal information and a supporting deposition reciting his version of the incident. Deputy Kested needed nothing further to lawfully arrest Singer.

■■■■ An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity. *See Hebron v. Touhy*, 18 F.3d 421, 422–423 (7th Cir.1994); *Miloslavsky v. AES Engineering Soc., Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd*, 993 F.2d 1534 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993). In this case, Shuler's supporting deposition recounted that Singer presented him with a list of items he was taking and asked if he could come back later to pay for them; according to Shuler, he expressly told Singer it was not all right for Singer to take the food items from the store without paying. The circumstances of this arrest raise questions as to the motivation of the arresting officer, the village officials, even the store employees; but motivation is not a consideration in assessing probable cause. *See Mozzochi v. Borden*, 959 F.2d 1174, 1179–1180 (2d Cir. 1992). The facts as presented to Kested by Shuler established each of the elements of the crime of larceny.[8] Under these circumstances, Kested had probable cause to arrest Singer for the crime of petit larceny.

## C. Conspiracy.

■■■■ In addition to the substantive claims of false arrest and malicious prosecution, Singer also alleged (under § 1983) that the defendants conspired to violate his constitutional rights. While substantive claims under § 1983 are normally brought only against state officials, "a § 1983 claim may be proved by showing that a person acting under color of state law ... collaborated or conspired with a private person ... to deprive the plaintiff of a constitutional right...." *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir.1980) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see also American Broadcasting Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir.1977) ("an ordinary citizen who conspires with a state agent to violate the civil rights of a plaintiff is equally liable...."). Thus, this claim appears to have been interposed in order to bring federal suit against the private party defendants: Stewart's Ice Cream Co., Raymond Shuler and Andrea Nicollela.

■■■■ The district court dismissed this claim on the ground that a plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights. In this we agree. Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source. Therefore, although the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970) (one of the necessary elements of a § 1983 action is "that the defendant has deprived [the plaintiff] of a right secured by the 'Constitution and laws' of the United States.").

**8.** Under New York law:

A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

N.Y. Penal Law § 155.05 (McKinney 1988); *see also* N.Y. Penal Law § 155.25 (McKinney 1988) (defining "petit larceny").

The district court based its ruling on the conclusion that Singer could not prove essential elements of his claims of false arrest and malicious prosecution, and therefore could not prove an actual violation of his constitutional rights. As noted above, these claims primarily implicate Fourth Amendment rights; Singer, however, also pleaded a violation of his First Amendment rights—a claim the district court failed to address.

■ Singer alleges that the various parties conspired to, and in fact did, charge him with petit larceny as a payback for his political activities and his publication of *The Northville Free Press*. For example, paragraph 22 of his second amended complaint alleges that "[a]mong the purposes of said conspiracy was the attempt to dissuade plaintiff from publishing his responsible views regarding politics, and local government, [and] police activity and the fact that the police were known to frequent the local Northville Stewart's Shop." This allegation of retaliatory prosecution goes to the core of the First Amendment, and is thus a claim that may be pursued under § 1983. *See Mozzochi,* 959 F.2d at 1178 (plaintiff's letter writing campaign to a local official, criticizing official's performance of duties, was "fully protected by the First Amendment," and permitted inference "that the prosecution was initiated to deter, if not silence, plaintiff's criticisms....") (internal quotations omitted); *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir.1990) ("It is undisputed that retaliatory prosecution may expose a state official to section 1983 damages.").

It is, however, insufficient to merely plead facts upon which an inference of retaliatory prosecution may be drawn. We have held previously that if the officer either had probable cause or was qualifiedly immune from subsequent suit (due to an objectively reasonable belief that he had probable cause), then we will not examine the officer's underlying motive in arresting and charging the plaintiff. *See Mozzochi,* 959 F.2d at 1179–80 (probable cause); *Magnotti,* 918 F.2d at 368 (qualified immunity). As noted above, there was probable cause to arrest and charge Singer with petit larceny. Furthermore, although Singer alleges damage to his reputation, he has failed to allege with sufficient particularity any actual "chilling" of his speech, or of his participation in the political process. While the vague allegations in his complaint might carry such a suggestion, Singer did not press this issue in the district court, nor did he advance any arguments in support of this particular claim on appeal. As a matter of fact, Singer continued to publish his newspaper. Under these circumstances, we conclude that he has failed to meet his burden of demonstrating a viable First Amendment claim: "An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." *Mozzochi,* 959 F.2d at 1180.

Because the § 1983 conspiracy claim was properly dismissed, and because this was the only federal claim that could be asserted against the private-party defendants, we hold that the district court did not err in its *sua sponte* dismissal of the complaint against them—particularly in light of the court's appropriate exercise of discretion in refusing to accept jurisdiction over the supplemental state claim after the federal claims had been dismissed.

### Conclusion

We have considered all the other arguments raised by the parties and find them to be without merit. For the reasons stated above, the judgment of the district court dismissing the complaint against all defendants is affirmed.