John ELKINS, Plaintiff,

v.

J.A. BROOME, in his individual and official capacities, as a police officer for the City of Winston–Salem, Defendant.

No. CIV. 1:02CV00305.

United States District Court,
M.D. North Carolina.

July 26, 2004.

John Elkins, Winston–Salem, NC, Plaintiff Pro Se.

Gusti W. Frankel, Alison Raney Bost, Rachel E. Daly, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This case arises from the alleged unlawful arrest of Plaintiff John Elkins ("Plaintiff") pursuant to a warrant executed by Defendant J.A. Broome ("Defendant"), an officer of the Winston–Salem Police Department. Plaintiff brings claims against Defendant in his individual and official capacities for violations of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. On June 3, 2004, the court granted summary judgment for Defendant on Plaintiff's Fifth and Fourteenth Amendment claims and on Plaintiff's official capacity claim. Pending before the court are Defendant's motion for summary judgment on Plaintiff's First and Fourth Amendment claims and Plaintiff's motion for partial summary judgment on the Fourth Amendment claim. For the following reasons, the court will grant summary judgment for Defendant on Plaintiff's remaining claims and deny summary judgment for Plaintiff on the Fourth Amendment claim.

## FACTS

Plaintiff is a California resident who visited his father in Winston–Salem, North Carolina, in late December 1998. During his visit, Plaintiff was involved in a car accident with another motorist. A witness to the accident claimed that Plaintiff caused the accident by running a red light.

Defendant, the investigating officer at the accident scene, asked Plaintiff to provide his automobile insurance information. After looking in his car and wallet, Plaintiff told Defendant he could not find the insurance papers. Plaintiff also informed Defendant that he recently had changed insurance carriers and could not remember the new carrier's name. Defendant indicated that if Plaintiff found his insurance information, he should contact the Winston–Salem Police Department.

Consistent with Winston–Salem Police Department policy, Defendant executed an accident report regarding the incident. Because Defendant did not know whether Plaintiff had insurance, he could not accurately complete the report, marking Plaintiff's insurance information "unknown." Because the accident witness was a friend of the other driver involved, Defendant concluded in the report that fault could not be determined.

Approximately two weeks after the accident, Defendant contacted Plaintiff to see if Plaintiff had found his insurance information. Plaintiff responded that he still had not located the information and that there was no one in California who could get it for him. Plaintiff alleges that when he asked Defendant what he should do, Defendant replied that there was nothing else Plaintiff could do and that Plaintiff need not return to California to retrieve the information. A few days later, Plain-

tiff discovered that Defendant had filed a supplement to his original accident report. The supplemental report, dated January 12, 1999, stated that Plaintiff had run the red light.

Plaintiff claims that he called Defendant's superior, Sergeant Lloyd, to discuss the supplemental report. Plaintiff also allegedly left telephone messages for Defendant regarding the report. Plaintiff maintains that Defendant did not reply to his messages and that Plaintiff had no other contact with the police department until the day of his arrest. In contrast, Defendant alleges that he called Plaintiff numerous times and left messages requesting his insurance information. Defendant further claims that in one of these messages he informed Plaintiff that a warrant would be issued for his arrest if he did not provide the insurance information.

In April 1999, a few months after the accident occurred, Plaintiff mailed a letter to Sergeant Lloyd, Defendant's superior. In the letter, Plaintiff asked Sergeant Lloyd to re-investigate the accident, suggesting that Defendant had filed the supplemental report as a result of his bias against Plaintiff. Six days later, Sergeant Lloyd called Plaintiff, and a heated discussion about the accident ensued. That afternoon, pursuant to a warrant obtained by Defendant, Plaintiff was arrested for violating North Carolina General Statute § 14–223, which prohibits delaying a police officer in the performance of his duties. See N.C. Gen.Stat. § 14–223.[1]

Plaintiff pled not guilty to the charge and attended his trial in Forsyth County District Court. He was represented by counsel and testified on his own behalf. Defendant testified for the prosecution. The district court judge found Plaintiff guilty of violating North Carolina General Statute § 14–223 but entered a prayer for judgment continued on the payment of court costs. A judgment was never entered in Plaintiff's case. On April 22, 2002, Plaintiff filed this Section 1983 action. Plaintiff still has not provided any insurance information to the Winston–Salem Police Department.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

---

**1.** North Carolina General Statute § 14–223 provides, "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to dis- charge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen.Stat. § 14–223.

the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

The parties devote much of their briefs to analyzing the meaning of North Carolina General Statute § 14–223. They dispute whether Plaintiff's conduct constitutes an actionable violation of the statute. However, the court need not reach the merits of these arguments because Plaintiff's trial and subsequent guilty verdict in district court precludes him from bringing his Section 1983 claims.

■ In his first claim, Plaintiff alleges that Defendant violated his Fourth Amendment rights by obtaining a warrant for Plaintiff's arrest without probable cause. "[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause ... are analogous to the common-law tort of malicious prosecution." *Brooks v. City of Winston–Salem,* 85 F.3d 178, 182 (4th Cir.1996). As a result, " § 1983 actions seeking damages for unconstitutional arrest or confinement imposed pursuant to legal process ... must allege and prove a termination of the criminal proceedings favorable to the accused." *Id.* at 183; *see also Lambert v. Williams,* 223 F.3d 257, 262 (4th Cir.2000) (acknowledging that while "there is no such thing as a ' § 1983 malicious prosecution claim,' " a claim for unlawful seizure pursuant to legal process includes the common-law requirement "that the prior proceeding terminate favorably to the plaintiff").

The "favorable termination" requirement has been narrowly interpreted to encompass " 'only terminations that indicate that the accused is innocent.' " *Uboh v. Reno,* 141 F.3d 1000, 1004 (11th Cir. 1998) (quoting *Hilfirty v. Shipman,* 91 F.3d 573, 580 (3d Cir.1996)); *see also Barnes v. Danner,* 104 F.3d 358, 1996 WL 733139, at *2 (4th Cir.1996) (Table). "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pur-

sue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Roesch v. Otarola,* 980 F.2d 850, 853 (2d Cir.1992). Proceedings that do not terminate in a plaintiff's favor include withdrawal of criminal charges pursuant to a compromise agreement, *see Taylor v. Gregg,* 36 F.3d 453, 455–56 (5th Cir.1994); dismissal of charges "in the interest of justice," *see Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir. 1995); reversal of a conviction accompanied by a remand for a new trial, *see Brandley v. Keeshan,* 64 F.3d 196, 199 (5th Cir.1995); and "adjournment in contemplation of dismissal," or expungement of the plaintiff's record, *see Singleton v. City of New York,* 632 F.2d 185, 193–94 (2d Cir. 1980). *See also Nicholas v. Wal–Mart Stores Inc.,* 33 Fed.Appx. 61, 64–65 (4th Cir.2002) (unpublished) (reversing district court denial of judgment as a matter of law for defendant on malicious prosecution claim because plaintiff failed to show *nolle prosse* was the result of her innocence).

Likewise, Plaintiff's prayer for judgment continued ("P.J.C.") does not indicate that Plaintiff is innocent of the charges brought against him. On the contrary, the P.J.C. in this case was issued after a district court judge found Plaintiff guilty of violating North Carolina General Statute § 14–223. The judge entered the P.J.C. at the conclusion of a trial in which both parties presented arguments and testimonial evidence. Though Plaintiff never received a judgment, the proceedings did not terminate in his favor. As a result, Plaintiff fails to meet an essential element of his claim.

■ Furthermore, Plaintiff's guilty verdict demonstrates that Defendant had probable cause to seek a warrant. *See Hoover v. McDowell County,* 155 F.3d 559, 1998 WL 398825, at *3 (4th Cir.1998) (unpublished) (rejecting plaintiff's claim for

malicious prosecution because plaintiff's conviction, despite being overturned, established the existence of probable cause under North Carolina law); *see also Smith v. Swoope,* 351 F.Supp. 159, 163 (W.D.Va. 1972). The fact that Plaintiff was not formally sentenced or "convicted"[2] does not undermine this conclusion. Because there was sufficient probable cause to justify Plaintiff's arrest, Plaintiff cannot maintain his Fourth Amendment claim under Section 1983. *See Wilkes v. Young,* 28 F.3d 1362, 1365–66 (4th Cir.1994).

 Plaintiff's First Amendment claim suffers a similar fate. Plaintiff contends Defendant sought a warrant for Plaintiff's arrest because Plaintiff complained to Defendant's superior. As proof of Defendant's improper motive, Plaintiff highlights the fact that he was arrested 111 days after the accident but only six days after sending a letter that criticized Defendant's conduct. Plaintiff also references a police report demonstrating that Defendant knew about Plaintiff's letter before he obtained the arrest warrant. This evidence tends to call Defendant's motives into question. However, when "law enforcement officers might have a motive to retaliate but there [is] also a ground to charge criminal conduct against the citizen they dislike[] .... the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan v. Tejeda,* 290 F.3d 252, 261–62 (5th Cir. 2002); *see also Mozzochi v. Borden,* 959 F.2d 1174, 1180 (2d Cir.1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."). The existence of probable cause for the arrest defeats Plaintiff's First Amendment claim, regardless of Defendant's motivation. *See, e.g., Wood v. Kesler,* 323 F.3d 872, 883 (11th Cir.2003); *Luellen v. City of E. Chicago,* 350 F.3d 604, 616 (7th Cir.2003); *Keenan,* 290 F.3d at 260, 262; *Smithson v. Aldrich,* 235 F.3d 1058, 1063 (8th Cir.2000); *Singer,* 63 F.3d at 120; *Skoog v. Clackamas County,* 2004 WL 102497, at *22 (D.Or. Jan. 12, 2004) (unpublished); *Cavellini v. Groccia,* 1996 WL 464058, at *5 (E.D.N.C. Aug. 12, 1996) (unpublished). *But see Greene v. Barber,* 310 F.3d 889, 896–97 (6th Cir.2002) (stating that probable cause would not justify plaintiff's arrest if the arresting officer's true motive was to retaliate against plaintiff). Consequently, the court will grant summary judgment for Defendant.[3]

## CONCLUSION

For the foregoing reasons, the court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for partial summary judgment.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

---

**2.** Plaintiff and Defendant dispute whether a P.J.C. constitutes a conviction under North Carolina law. The court need not decide this issue to resolve the case. However, if Plaintiff's P.J.C. was a conviction, Plaintiff's claims would be precluded under the reasoning of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364 (concluding that plaintiff cannot bring a Section 1983 claim that if successfully prosecuted would necessarily imply that the plaintiff's outstanding criminal conviction was wrongful).

**3.** Because Plaintiff cannot show a violation of his federal rights to sustain his Section 1983 action, the court need not address the issue of qualified immunity. *See Hodge v. Jones,* 31 F.3d 157, 167 (4th Cir.1994).