**Trudy BERRY, Plaintiff,**

v.

**THE CITY OF PHILLIPSBURG, KANSAS; Kevin Knitter; and Rick Kester, Defendants.**

**Civ. A. No. 90–1252–B.**

United States District Court, D. Kansas.

June 17, 1992.

John T. Bird, Glassman, Bird and Braun, Caleb Boone, Hays, Kan., for plaintiff.

Lawton M. Nuss, Clark, Mize & Linville, Chtd., Salina, Kan., for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on the motions of defendants for partial summary judgment, (Docs. 25, 44), and summary judgment. (Doc. 90).[1] Plaintiff brings this action under 42 U.S.C. § 1983 for alleged constitutional violations arising out of her arrest by two members of the police department of Phillipsburg, Kansas.

The standards governing summary judgment motions are well established. "Entry of summary judgment is mandated,

---

1. The court will grant plaintiff's motion to extend time to respond to defendant's third motion for summary judgment, (Doc. 102), and will consider plaintiff's response.

after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States*, 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Washington v. Board of Public Utilities*, 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

For purposes of these summary judgment motions, the court accepts plaintiff's version of the disputed facts. Those portions of defendants' statement of facts not specifically controverted are deemed admitted. D.Kan. Rule 206(c).

On May 16, 1989, plaintiff pulled up in her van in front of her house in Phillipsburg, Kansas. Defendant Kester, an officer of the Phillipsburg Police Department, pulled up behind her. Kester told plaintiff that he had some tickets for her issued by defendant Knitter, the Chief of Police. The tickets concerned problems with plaintiff's four dogs. Kester spoke in a loud voice and was rude to plaintiff.

Kester took the tickets off his pad and handed them to plaintiff. Plaintiff became angry and refused to accept the tickets, stating "I don't want these" and "I don't have time for this." Plaintiff walked towards her house, whereupon Kester placed the tickets on the seat of plaintiff's van. When plaintiff saw Kester place the tickets in her van, she turned around, went back to the van, took the tickets out of the van, and threw them on the ground in her front yard. Kester then told plaintiff: "you're under arrest for littering," or words to that effect. Plaintiff told Kester: "you can go to hell," and she went into her house.

When plaintiff entered her house, she called her sister and told her to contact a local attorney because plaintiff believed she was going to jail. During this time, Kester called the police dispatcher and asked that Chief Knitter be sent to plaintiff's house. When Knitter arrived, Kester related to him what had happened. Knitter and Kester walked toward plaintiff's house. Plaintiff then went out in the yard to get her son and bring him inside. Knitter told plaintiff that she was under arrest for littering and told her not to go in the house. Plaintiff pulled her son in the house, and shut and locked the door.

Knitter was aware, or at least believed, that there had been a domestic disturbance in the past at the Berry house, during which incident a 12–gauge shotgun had been discharged. According to plaintiff this incident had occurred some 10 months before, and the gun had discharged by accident.

Knitter forced open the door. Plaintiff had just closed the door and was a few feet from the door when it came flying open. A scuffle ensued, the facts of which are in considerable dispute. Plaintiff, however, claims that Knitter knocked the wind out of her; that he choked her; that she could not breathe; that she did not attempt to resist arrest; that Knitter threw her around in a hall; that he forced her face into the carpet so that she could not breathe; and that he stuck his finger into her ear when she was pinned to the ground for the purpose of causing her pain. Plaintiff alleges that Kester assisted Knitter throughout this arrest by holding plaintiff's feet. Defendants admit that Knitter, after handcuffing plaintiff, hit plaintiff at least three times in the back and pulled her up off the floor with one hand on the cuffs and the other hand grasping her hair. (Defendant's Memo in Support, Doc. 90, at p. 8, ¶ 31). Knitter forcibly dragged plaintiff from her house by the handcuffs and her hair. Plaintiff was placed in Kester's police car and driven to the police station, where she learned that she was being charged with disorderly conduct.

As a result of this incident, plaintiff received medical treatment for multiple abra-

sions and contusions. None of plaintiff's bones were broken in the incident.

## I. *Failure to Plead*

■ As an initial matter, the court notes that defendants have challenged whether plaintiff has pled several of the claims now being asserted. On the ground of untimeliness, the magistrate previously denied plaintiff leave to amend her pleading. (Order of July 31, 1991; Doc. 37). Throughout defendants' various memoranda, defendants contend that plaintiff's complaint fails to state the following claims: excessive force under § 1983; false arrest and imprisonment under Kansas law; municipal liability under any theory.

Because the pretrial order has been filed in this case, the allegations and claims made therein supersede the complaint and are controlling. Fed.R.Civ.P. 16(e).

■ The court finds that the pretrial order sufficiently frames the theories and factual allegations found wanting by defendants. The pretrial order states the facts underlying the alleged excessive use of force, false arrest and imprisonment, and refers to the statute and state law theories by name. Moreover, the pretrial order states the facts underlying plaintiff's theory of municipal liability based upon the failure of the City to heed information that indicated individual defendants' violent propensities.

## II. *Constitutional Claims under § 1983*

The court initially notes that plaintiff has conceded the validity of defendants' challenge to her Eighth Amendment claim. (Doc. 35, at ¶ 23). The court will therefore grant summary judgment in defendants' favor on this claim.

### A. Excessive Force

■ Defendants contend that the force used was reasonable as a matter of law, or alternatively that they are entitled to qualified immunity.

■ A constitutional claim that officers used excessive force in effecting an arrest is evaluated under the Fourth Amendment standard of reasonableness, rather than the substantive due process standard. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Because plaintiff's arrest occurred on May 16, 1989—one day after *Graham* was decided—the court applies the *Graham* Fourth Amendment standard to this case.[2] Moreover, in passing on a claim of excessive force in violation of the Fourth Amendment, the constitutional inquiry of reasonableness is the same inquiry that determines whether qualified immunity is available to the state actor in his individual capacity. *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991); *Street v. Parham*, 929 F.2d 537, 540 (10th Cir.1991). The court therefore addresses defendants' alternate arguments together.

"Under the Fourth Amendment, the question is whether the defendants' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir.1992) (citing *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872). "Whether the force used in making an arrest was unreasonable is an issue to be determined in light of all the circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and actively resists arrest or attempts to evade arrest by flight." *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir.1989).

Applying these standards, the court finds that a jury could reasonably find that defendants' use of force was unreasonable under the circumstances. There is evidence that plaintiff was being arrested for nothing more than littering, and attempting

---

**2.** In any event, *Graham* applies retroactively to cases filed after that decision if plaintiff pleads her claim under the Fourth Amendment. *Austin v. Hamilton*, 945 F.2d 1155, 1161 (10th Cir. 1991); *Dixon v. Richer*, 922 F.2d 1456, 1460–62 (10th Cir.1991). Because plaintiff has pled a Fourth Amendment violation, she has stated no substantive due process claim.

to evade arrest by fleeing to her home; that her arrest for the underlying offense was not supported by probable cause; and that plaintiff did not resist arrest once defendants were in her home. If the jury were to accept this, it could reasonably conclude that breaking down the door to a person's home; tackling and choking that person in her home; and finally dragging that person from her home by handcuffs and hair is an unreasonable means by which to apprehend a suspected litterer. Although defendants contend that a single previous domestic disturbance gave rise to a concern of violence, this matter is more appropriately addressed to a jury.

■ Defendant Kester also contends that there is no evidence that he personally used excessive force on plaintiff, and that summary judgment as to the claim against him should be granted.

■ Section 1983 imposes liability upon any person acting under color of state law who "subjects, or causes to be subjected," any person to the deprivation of a federal right. *Vinyard v. King,* 728 F.2d 428, 433 (10th Cir.1984). As such, liability under § 1983 will lie against any person who personally participates in the deprivation of plaintiff's federal rights. *Id.; Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir.1976); *cf. Allen v. Denver Public School Bd.,* 928 F.2d 978, 983 (10th Cir. 1991) (personal involvement required under § 1981); *Lee v. Town of Estes Park,* 820 F.2d 1112, 1116 & n. 3 (10th Cir.1987) (nexus between conduct and deprivation required); *Croft v. Harder,* 730 F.Supp. 342, 353 (D.Kan.1989) (personal participation sufficient but not necessary under § 1983), *aff'd,* 927 F.2d 1163 (10th Cir.1991). Personal participation in the deprivation of a federal right may be found in the actor's acquiescence in the illegal action, *see Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir.1988), or in the failure of the actor to intervene when he has a duty to do so. *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1433 (10th Cir.1984), *cert. denied in part, granted in part as to other party,* 474 U.S. 818 & 805, 106 S.Ct. 65 & 40, 88 L.Ed.2d 53 & 33 (1985); *Mann v. Purcell,* 718 F.Supp. 868, 874 (D.Kan.1989); *see also Thomas v. Frederick,* 766 F.Supp. 540, 555 (W.D.La.1991) (deputy sheriff who did nothing when another sheriff used excessive force could be jointly liable).

Defendant Kester personally participated in the arrest of plaintiff and, under the facts presented, did nothing to intervene in Knitter's allegedly excessive use of force. This is more than sufficient to establish a nexus between Kester's conduct and plaintiff's alleged deprivation of her federal rights. *See also Snell v. Tunnell,* 920 F.2d 673, 701–02 (10th Cir.1990) (conspiracy to deprive plaintiff of federal rights), *cert. denied,* — U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). At most, the lesser involvement of Kester goes to the issue of his causal responsibility for plaintiff's damages. *Cf. Watts v. Laurent,* 774 F.2d 168, 179 (7th Cir.1985) (joint and several liability in § 1983 actions for conspiracy or indivisible injury), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1387 (7th Cir.1984) (same).

**B. Lack of Probable Cause to Arrest**

Defendants contend that the facts do not support a claim based upon a lack of probable cause to arrest, or alternatively, that they are entitled to qualified immunity from such a claim.

■ A police officer may make a warrantless arrest of a person if the officer has probable cause to believe that the person has committed or is committing a crime. *E.g., Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *United States v. Evans,* 937 F.2d 1534, 1537 (10th Cir.1991). "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Maher,* 919 F.2d 1482, 1485 (10th Cir.1990). This determination must be made "in light of the circumstances as they would have appeared

to a prudent, cautious, trained police officer." *Id.* at 1485–86.

In addition, although probable cause to arrest may be lacking, qualified immunity in a § 1983 action is available to state actors whose conduct was objectively reasonable in light of clearly established law and all the factual circumstances. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 638–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987). Thus, even if the plaintiff's rights were in fact violated, defendants "are entitled to immunity if a reasonable officer *could* have believed that probable cause existed to arrest [plaintiff]." *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (emphasis added).

Defendants contend that plaintiff's warrantless arrest was justified because she committed three state law offenses in the presence of Kester: (1) obstructing legal process; (2) disorderly conduct; and (3) littering.

### 1. *Obstructing Legal Process*

Defendants allege that plaintiff obstructed legal process within the meaning of K.S.A. § 21–3808 (1988), which provides:

> Obstructing legal process or official duty is knowingly and willfully obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

The statute is construed broadly under Kansas law. *State v. Lee,* 242 Kan. 38, 40, 744 P.2d 845 (1987). Thus, in *State v. Merrifield,* 180 Kan. 267, 270, 303 P.2d 155 (1956), the court held that the statute encompassed the act of a person who, while under arrest, went into his house and refused to open the door. In order to constitute obstruction of an officer in the performance an official duty, however, the person charged "must *substantially* hinder the officer." *Lee,* 242 Kan. at 43, 744 P.2d 845 (emphasis in original).

Defendants allege that plaintiff obstructed process when she initially refused the tickets and when she thereafter returned to the van and threw down the tickets. As to the first act, the court "know[s] of no law which requires a potential recipient of a summons or other process to cooperate with and accommodate a process server." *Threadgill v. Beard,* 225 Kan. 296, 303, 590 P.2d 1021 (1979) (no violation of K.S.A. § 21–3808 when deputy had difficulty serving defendant). *See also* K.S.A. § 12–4207 (municipal complaints may be served personally, at the person's dwelling house, or by mail). As to the second act, the court is unable to discern how plaintiff's actions *after* the accomplishment of service could in any way have interfered with that service. At the time that plaintiff returned to the van and threw the tickets on the ground, service had already been effected—or at least was thought to have been effected by Kester. The court concludes that at the time when plaintiff was first told she was under arrest, plaintiff's actions did not constitute of violation of K.S.A. § 21–3808. Moreover, because the law on this subject was clearly established at the time of plaintiff's arrest, a reasonable officer could not have thought otherwise under plaintiff's version of the facts. Thus, qualified immunity is unavailable.

Nonetheless, there is no evidence that Knitter had any involvement in plaintiff's arrest as of the time when Kester first told plaintiff that she was under arrest. When Knitter first became involved in plaintiff's arrest, plaintiff was actively engaged in a violation of K.S.A. § 21–3808 by resisting an arrest. *See Merrifield,* 180 Kan. at 270, 303 P.2d 155. The court will therefore grant summary judgment in favor of Knitter on plaintiff's § 1983 claim of arrest without probable cause.

### 2. *Disorderly Conduct*

Defendants also argue that there was probable cause to arrest plaintiff for disorderly conduct.

> Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or

provoke an assault or other breach of the peace:

(a) Engaging in brawling or fighting; or

(b) Disturbing an assembly, meeting, or procession, not unlawful in its character; or

(c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

K.S.A. § 21–4101. The statute is construed narrowly to apply only to constitutionally unprotected "fighting words"— words " ' "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." ' " *State v. Huffman,* 228 Kan. 186, 190–92, 612 P.2d 630 (1980) (quoting *Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972)). *See also Mann v. Purcell,* 718 F.Supp. 868, 875–76 (D.Kan. 1989); *City of Wichita v. Hughes,* 12 Kan. App.2d 621, 625, 752 P.2d 1086 (1988) ("name calling" not prohibited).

Viewing the evidence in a light most favorable to plaintiff, the court finds that it would be objectively unreasonable for an officer to believe that plaintiff had committed the offense of disorderly conduct at the time when she was first told she was under arrest. At that time, plaintiff had refused to accept the tickets; had become "angry;" had turned away from Kester to go to her house; and had taken the tickets from her van and thrown them on the ground. Plaintiff was then told she was under arrest. Even under defendants' version of the facts, there is little or no evidence that plaintiff's conduct or words posed any immediate threat to a breach of peace.

### 3. *Littering*

■ Finally, defendants argue that plaintiff had committed the offense of littering.

Littering is … throwing, … any refuse of any kind or any object or substance which tends to pollute, mar or deface, into, upon or about:

(a) Any public street, highway, alley, road, right-of-way, park or other public place, … or

(b) Any private property without the consent of the owner or occupant of such property.

K.S.A. § 21–3722 (1988). Plaintiff contends that she threw the tickets onto the ground in her front yard, and not in the street. In fact, plaintiff alleges that Kester threw the tickets in the street on the command of Knitter. Thus, accepting plaintiff's version of the disputed facts, Kester could not have reasonably believed that plaintiff's arrest for littering was supported by probable cause.

The court finds that plaintiff has stated a viable claim against Kester for an arrest without probable cause, and that Kester is not entitled to qualified immunity on this claim.

### C. Municipal Liability

■ The defendant City of Phillipsburg moves for summary judgment on all § 1983 claims against it.

■ Qualified immunity is unavailable to municipalities and other governmental agencies sued under § 1983. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Ross v. Neff,* 905 F.2d 1349, 1355 (10th Cir.1990). The City, however, may not be held liable under a theory of respondeat superior for the constitutional torts of its employees. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, municipal liability under § 1983 will lie only when the deprivation of rights has been caused by an illegal policy or custom of the municipality, *e.g., Summers v. Utah,* 927 F.2d 1165, 1170 (10th Cir. 1991), or by a single illegal act taken by a state actor having final policy-making authority over the subject matter of alleged deprivation. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Meade v. Grubbs,* 841 F.2d 1512, 1529 (10th Cir. 1988).

Plaintiff supports her claim with an affidavit[3] filed by Bill Kennedy, who was the mayor of Phillipsburg at the time of plaintiff's arrest. Kennedy avers that in April of 1989 he received information from the Garden City, Kansas Police Department concerning the employment history of defendant Knitter in that department. Kennedy learned that Knitter, while employed as a police officer in Garden City, had been unable to maintain proper police discipline, and had displayed a tendency to be unnecessarily physically rough with persons whom he stopped, investigated, or arrested. Kennedy communicated his knowledge to the City Council on or about April 17, 1989 and recommended that Knitter be fired. Kennedy states that the City Council Members ignored his request and the information he had given them, and that the City Council desired to have Knitter remain as Chief of Police. Kennedy further states that the City Council Members indicated to him that they did not care whether Knitter had previously exhibited a tendency to use unlawful force when encountering arrestees.

The court finds that the affidavit of Kennedy is more than sufficient to raise of question of fact regarding municipal liability for Knitter's alleged excessive use of force. A municipality will be liable under § 1983 "if it 'was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm.'" *Vinyard v. King,* 728 F.2d 428, 433 (10th Cir.1984) (quoting *McClelland v. Facteau,* 610 F.2d 693, 697 (10th Cir.1979)). *See also Houston v. Reich,* 932 F.2d 883, 888 (10th Cir.1991) (deliberate indifference, official sanction, or tacit approval of unconstitutional conduct will expose municipality to § 1983 liability). On this basis alone, summary judgment in favor of the City is inappropriate.

■ Moreover, a question remains as to whether Knitter, as the Chief of Police, may be considered the public official with final policy-making authority over the subject matter of challenged actions. Defen-

dant contends that in Kansas, only the mayor has the "superintending control of all the officers and affairs of the city,...." K.S.A. § 14–301. However, "[i]n identifying those local officials responsible for the challenged action or policy, the trial court must review 'the relevant legal materials, including state and local positive law, as well as "'custom or usage' having the force of law."'" *Munz v. Ryan,* 752 F.Supp. 1537, 1550 (D.Kan.1990) (emphasis added; quoting *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989)). The affidavit of Kennedy indicates that as a matter of practice, Knitter was the final, and indeed only, decision-maker with respect to arrests in the City. *See Munz,* 752 F.Supp. at 1550 ("Courts have often recognized the final policy or decision making authority of police chiefs or sheriffs such that their actions can be said to represent actions taken by the governmental units they represent.").

The court concludes that there is a sufficient factual basis as to plaintiff's § 1983 claim against the City for the use of excessive force.

Nonetheless, plaintiff does not respond to defendant City's motion for summary judgment on the § 1983 claim for arrest without probable cause. Therefore, the court will grant defendant City's motion on that claim.

The City is also immune from liability for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Harris v. Board of Public Utilities of Kansas City,* 757 F.Supp. 1185, 1195 (D.Kan.1991). For this reason, summary judgment will be granted on plaintiff's claim for punitive damages against the City.

### III. *State Law Claims*

#### A. Assault and Battery

■ Under Kansas law, a police officer may use "any force which he *reasonably*

---

**3.** Defendants challenge consideration of this affidavit as procedurally deficient. Plaintiff has filed an amended affidavit that appears to cor-

rect the deficiencies, and the court will therefore consider it.

believes to be *necessary* to effect the arrest...." K.S.A. § 21–3215(1) (emphases added). The use of reasonable force necessary is a defense to a civil action. *See Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1036–37, 667 P.2d 380 (1983).

Because the court cannot say that the use of force in this case was either reasonable or necessary, an issue of fact is presented for the jury on this claim.

### B. False Arrest

Defendants contend that the Kansas Tort Claims Act protects them from liability for the state claim of false arrest and imprisonment. *See* K.S.A. § 75–6104(e) (Supp. 1991); *Mendoza v. Reno County*, 235 Kan. 692, 681 P.2d 676 (1984). Plaintiff does not respond to this argument, and the court will therefore grant judgment in defendants' favor on this claim.

### C. City Liability

Plaintiff has not responded to defendant City's motion for summary judgment on all state claims, and this motion will therefore be granted.

Accordingly, defendants' motions for partial summary judgment (Docs. 25, 44) and summary judgment (Docs. 90) are denied in part and granted in part as set forth in this order.

IT IS SO ORDERED.