Marc WILLIAMS, Plaintiff,

v.

David A. WEBER, James M. Stover, and City of Olathe, Kansas, Defendants.

No. 95–2045–KHV.

United States District Court, D. Kansas.

Oct. 26, 1995.

Order Overruling Motion for Reconsideration Nov. 2, 1995.

John W. Kurtz, The Popham Law Firm, Kansas City, MO, Bobbie R. Bailey, Kansas City, MO, for Marc Williams.

Lawrence L. Ferree, III, Ferree, Bunn & O'Grady, Chtd., Overland Park, KS, Catherine J. Watson, Kansas City, MO, for David A. Weber, James M. Stover and City of Olathe, Kansas.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendants Weber and Stover's Motion for Summary Judgment* (Doc. # 34), filed August 4, 1995. Plaintiff initiated this six-count action, alleging that defendants violated his civil rights under 42 U.S.C. § 1983 and § 1985. Specifically, plaintiff contends that (1) defendant Weber subjected him to false arrest and wrongful detention in violation of the Fourth, Fifth and Fourteenth Amendments; (2) defendants Weber and Stover maliciously, unlawfully and unconstitutionally initiated a criminal prosecution against him; and (3) defendant Weber assaulted, battered and unlawfully and unconstitutionally used force against him. Plaintiff also alleges that defendants conspired to commit such civil rights violations.[1] In this motion, defendants assert that their actions with respect to plaintiff were proper and lawful, and thus plaintiff has failed to establish any cause of action under 42 U.S.C. § 1983 or § 1985. Defendants further contend that they are entitled to qualified immunity, and that they therefore may not be held liable for the actions which plaintiff alleges.

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Factual disputes about immaterial matters are irrelevant to a summary judgment determination. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). While it is not the trial judge's function to weigh the evidence and determine the truth of the matter at the summary judgment stage, summary judgment in favor of the moving party is nonetheless proper if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1518 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995).

---

1. Since filing his complaint, plaintiff has voluntarily withdrawn Count VI, which alleged that defendants conspired to use excessive or unlawful force against him.

*Factual Background*[2]

Not surprisingly in this type of action—where a citizen alleges police misconduct—plaintiff's account of the relevant events differs dramatically from that of defendants. Because this matter is before the Court on defendants' motion for summary judgment, the Court must accept as true all of plaintiff's factual allegations which are properly supported by the record and afford plaintiff all reasonable inferences therefrom. With that preface, the Court finds the following facts pertinent to this motion for summary judgment.

On the evening of January 30, 1993, around 7:00 p.m., Officer David Weber was patrolling the vicinity of 1500 East Spruce in Olathe, Kansas. A nearby service station had been robbed the previous night, and the robber reportedly fled in the general direction of that neighborhood. Officer Weber was therefore looking for suspicious activity.

Weber saw a gray Chevrolet Cavalier parked on the wrong side of the street with its lights out and the engine running. After some time, he saw the car's headlights illuminate and the car move about 25 yards to the east. The car then pulled into a parking lot and parked between the painted lines of a parking space.[3] Weber approached the vehicle and asked the occupants for identification. The driver, Colleen Egidy, gave Weber her driver's license; plaintiff, who was a passenger in the car, did not have any identification, but gave Weber his correct name, address and date of birth. The parties agree that plaintiff cooperated fully with Weber to this point.

Weber testified that his suspicions were raised because of the car's unusual position (on the wrong side of the street), because of the robbery that had taken place the night before and because the car was parked in the business district of Olathe at a time when most of the businesses were closed. When asked what they were doing in that location, plaintiff and Egidy responded that they were just talking. Weber testified that he was suspicious that plaintiff and Egidy had been arguing; his suspicions were heightened, he claims, when they did not disclose to him the nature of their suspected disagreement. Plaintiff and Egidy both explained in their depositions that they had not seen each other for a week, that they were talking and catching up on the week's events together and that they were trying to decide where to go out to dinner.

Weber stated that he suspected at this point that plaintiff had committed "a potential criminal act":

> I noted Mr. Williams had a black cap on and a dark-colored coat, and that fit the general descriptors of the clothing that the guy was wearing the night previous. He was a medium build and all that that [sic] I had stated previously [the location, the time of day, the awkward angle of the car, the suspected argument] heightened my suspicions of a potential criminal act.

*Weber Deposition*, pp. 95–96. The suspect from the alleged robbery the night before had been described as a 50–60 year-old black male, with salt and pepper colored hair, approximately 5' 6" or 5' 7", around 150–155 pounds, and wearing a dark colored baseball cap and a waist-length, zippered jacket. At the time of his arrest, plaintiff was 21 years old. He was described as 5' 10" to 5' 11", and he weighed between 220 and 230 pounds. He had short black hair, and he wore a baseball cap and a knee length, multi-colored coat. Therefore, the only objective similarity between the two men was that each was a black male wearing a baseball cap.

Weber returned to his car with the information Egidy and plaintiff had given him and called his dispatcher to verify the information and to report an "occupied vehicle check."

---

**2.** The facts set forth in this memorandum and order are either uncontroverted or, where controverted, construed in the light most favorable to the nonmoving party. Immaterial facts and factual allegations not properly supported by the record are omitted.

**3.** Weber testified in his deposition that the car was parked at an awkward angle, with the right front wheel on a curb in the parking lot. He testified that he found it suspicious that a car should be idling with its lights off, parked on the wrong side of the street in a business district at night, when the local businesses were closed and that the car should "suddenly" turn on its lights and move into a parking space at such an erratic angle.

The dispatcher verified plaintiff's name, address, Social Security number, height, weight and other general descriptors. The dispatcher also told Weber that plaintiff had had prior contact with the police and that he was "J–10." "J–10" is a code for "armed and dangerous." [4]

Defendants contend that at this point, Officer Stover was dispatched to the scene. Weber returned to Egidy's car and informed plaintiff that the dispatcher had identified him as armed and dangerous. Plaintiff, in order to cooperate with Weber and in hopes of being allowed to leave, volunteered to let Weber search him for weapons.[5] Weber accepted and asked plaintiff to step out of the car and assume the "search position."

Plaintiff complied with Weber's request, and Weber commenced a "pat-down" search for weapons.[6] In the process, Weber found a twelve-gauge shotgun shell and a wallet and removed them from plaintiff's pocket. Weber began looking through plaintiff's wallet, dropping some of the contents on the ground. Defendants assert that Weber was justified in searching the contents of the wallet because a razor blade or a very small derringer might have been concealed there. Plaintiff believes that Weber's search of his wallet exceeded the scope of the voluntary search for weapons. As some of the paper items from the wallet began to blow away, plaintiff turned around and took the wallet from Weber. Plaintiff put the wallet under his left hand and returned his hands to the hood of the patrol car. Weber asked plaintiff to return the wallet, and plaintiff did so. Weber contends that plaintiff struck the top of Weber's hand in retrieving the wallet from him; plaintiff denies that he touched Weber.

Weber placed plaintiff under arrest for obstructing legal process and battery on a law enforcement officer. Plaintiff maintains that Weber did not tell him why he was being arrested or handcuffed at that time.

Plaintiff complied, however, as Weber handcuffed his hands behind his back.

Weber then walked plaintiff to the rear door of the patrol car. Weber claims that plaintiff voluntarily sat down on the back seat and that Weber did not touch, strike, hit or push him. Plaintiff alleges that Weber grabbed plaintiff's face with the palm of his hand and forcefully pushed plaintiff backward toward the open police car door. Plaintiff claims his neck and head area struck the door frame, causing an extremely painful neck strain and creating a bruise on the back of his head.

The police tracking system indicates that plaintiff was arrested at 7:10 p.m. Weber took plaintiff to the Olathe Police Department, where he was processed. Plaintiff was transported to the Johnson County Adult Detention Center at approximately 1:50 a.m. on January 31, 1993, where he remained in custody over the weekend.

On February 1, 1993, the Johnson County District Attorney charged plaintiff with obstructing a properly identified law enforcement officer and battery on a law enforcement officer. A jury subsequently acquitted plaintiff on both charges. During the course of the criminal proceedings, plaintiff filed a motion to suppress evidence of the stop and seizure—and all evidence acquired therefrom—on the grounds that because Weber had no reasonable, particularized suspicion that the occupants of the car had been involved in any criminal activity, Weber's original stop of Egidy's vehicle was improper. The court denied the motion, stating, "I am going to deny the motion, because the officer has testified there was a technical parking violation." Plaintiff's counsel later filed a motion for acquittal, arguing that the State had failed to produce sufficient evidence for a reasonable jury to find plaintiff guilty beyond

4. Weber testified that Olathe Police Department policy requires officers to search any individual identified as "J–10." However, plaintiff disputes this fact, and defendants have offered no corroborating testimony or documentation which would support Weber's statement.

5. Weber claims that plaintiff asked sarcastically whether Weber would like to search him and that plaintiff's demeanor was uncooperative, ag-

gressive and hostile; however, plaintiff denies this characterization of his behavior.

6. Weber contends that plaintiff was noncompliant and had to be told approximately three times to put his hands on the hood of the car, but he admits plaintiff assumed the search position within five to ten seconds of when Weber asked him to do so.

a reasonable doubt on either of the two charges against him. The court also denied this motion.

Plaintiff claims he suffered actual damages in hiring a lawyer to defend him against the criminal charges. He also claims he suffered emotional damages in connection with the arrest, the use of excessive force and the malicious prosecution that he alleges here.

## Discussion

### A. Count I: False Arrest/Wrongful Detention Claim Against Weber

Plaintiff claims that Weber falsely arrested and wrongfully detained him in violation of his rights under the Fourth, Fifth and Fourteenth Amendments. Defendants claim that Weber had probable cause to arrest plaintiff for obstructing legal process and for battery, and therefore plaintiff's rights were not abridged. Defendants argue further that probable cause was conclusively established during the criminal proceedings and that plaintiff is now precluded from contesting the issue again in this civil case. Even if Weber did not have probable cause to arrest plaintiff, and even if plaintiff is not collaterally estopped from raising the issue of probable cause, defendants argue that qualified immunity shields Weber from liability in this case.

### 1. Probable Cause

■ A police officer may make a warrantless arrest if the officer has probable cause to believe that the person has committed or is committing a crime. *Berry v. City of Phillipsburg, Kan.,* 796 F.Supp. 1400, 1405 (D.Kan.1992). "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quoting *United States v. Maher,* 919 F.2d 1482, 1485 (10th Cir.1990)). This determination must be made "in light of circumstances and facts as they would have appeared to a prudent, cautious, trained police officer." *Maher,* 919 F.2d at 1485–86.

■ The Tenth Circuit has recognized that in civil rights cases such as this one, probable cause to arrest is ordinarily a question of fact for the jury:

It is true that the issue of probable cause ordinarily is for the judge rather than the jury. That is because the issue usually arises in the context of a motion to suppress evidence, which the judge decides. But where the issue arises in a damage suit, it is ... a proper issue for the jury if there is room for a difference of opinion. The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the underlying issue in deciding negligence—a classic jury issue.

*DeLoach v. Bevers,* 922 F.2d 618, 623 (10th Cir.1990); *see also Marland v. Heyse,* 315 F.2d 312, 314 (10th Cir.1963); *Stringer v. Dilger,* 313 F.2d 536, 541 (10th Cir.1963).

■ Plaintiff here has identified evidence which provides ample room for difference of opinion whether Weber had probable cause to arrest him for obstructing legal process or battery. Plaintiff and Colleen Egidy both testified that plaintiff cooperated fully during Weber's interrogation and pat-down, so that he could not have obstructed Weber's alleged investigation in any way. Plaintiff also testified that he did not strike or even make contact with Weber's hand when he reclaimed his open wallet. A jury could find that Weber lacked probable cause to arrest plaintiff for battery. Moreover, even taking Weber's account as true, a jury might reasonably find that Weber did not have probable cause to arrest plaintiff for obstruction of legal process. Plaintiff's story and Weber's story directly contradict each other, and they cannot be reconciled without evaluating the truthfulness of each. This Court cannot engage in that task without encroaching upon the province of the jury. Therefore, summary judgment on the issue of probable cause is inappropriate.

### 2. Collateral Estoppel

■ It is well-established that a plaintiff may not relitigate the issue of probable cause in a civil action once the issue has been determined in a criminal action. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Searing v. Hayes,* 684 F.2d 694, 696 (10th Cir.1982); *Maxfield v. Thomas,* 557 F.Supp. 1123, 1132 (D.Idaho

1983). Defendants argue that the trial court in the criminal proceeding conclusively determined the issue of probable cause and that plaintiff is therefore precluded, or estopped, from raising the issue again in this civil proceeding.

To determine the preclusive effect of the criminal court's rulings, if any, this Court must look to Kansas law on issue preclusion. *Franklin v. Thompson,* 981 F.2d 1168, 1170 (10th Cir.1992) (citing *Haring v. Prosise,* 462 U.S. 306, 314, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983)). Under Kansas law, the doctrine of collateral estoppel, or issue preclusion, applies where the following is shown:

> (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment.

*Jackson Trak Group, Inc. v. Mid States Port Authority,* 242 Kan. 683, 690, 751 P.2d 122 (1988). Kansas courts have emphasized that "[o]ne essential element of collateral estoppel is that the issue to be determined ... must actually have been determined and necessary to support the judgment in the prior action." *Caplinger v. Carter,* 9 Kan.App.2d 287, 290, 676 P.2d 1300 (1984) (citing *Williams v. Evans,* 220 Kan. 394, Syl. ¶ 2, 552 P.2d 876 (1976). On the record before it, this Court finds that the criminal court in the prior action did determine the issue of Weber's probable cause to arrest plaintiff. However, the Court further finds that such determination was not necessary to support the judgment of acquittal in the criminal action.

### a. The Criminal Court's Determination of the Probable Cause Issue

Defendants' contention that the criminal court already ruled on the issue of probable cause is premised upon two motions plaintiff made in that proceeding. Plaintiff filed one motion to suppress the stop and seizure and one motion for acquittal. The court denied both motions.

Defendants conclusorily argue that the criminal court ruled several times on the issue of probable cause and that the criminal

transcript "clearly states Judge Davis found there was probable cause for the arrest and that the issue of whether the arrest was proper was specifically ruled upon." However, nowhere in the portions of the criminal transcript to which the parties have drawn to this Court's attention can we find a ruling whether Officer Weber had probable cause to arrest plaintiff for obstructing a law enforcement officer or for battery of a law enforcement officer, nor can we find any argument on this issue.

Plaintiff first moved to suppress evidence of the stop and seizure, and all evidence acquired therefrom, on the grounds that Weber had no reasonable, particularized suspicion that the occupants of the car had been involved in any criminal activity; therefore, plaintiff argued, the original stop of Egidy's vehicle was improper. The judge in the criminal proceeding described plaintiff's motion to suppress as a "motion to suppress the stop and seizure" and denied the motion, stating, "I am going to deny the motion, because the officer has testified there was a technical parking violation." This ruling on the propriety of Weber's initial stop does not amount to a finding of probable cause to arrest plaintiff for obstructing legal process and for battery; in fact, it appears to this Court from reviewing the transcript pages which the parties have provided that neither the judge nor the parties considered probable cause for the subsequent arrest at that point in time.

Defendants argue that the judge's mention of a "seizure" in considering plaintiff's motion to suppress must indicate he was referring to the subsequent arrest because the arrest was the only seizure which took place. This argument is spurious at best. Elementary, hornbook criminal procedure teaches us that seizure of a person may include "not only full-fledged arrests, but also 'investigatory detentions' and any other 'detention of the [person] against his will.'" Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.1(a), at 301 (2d ed. 1987) (citations omitted). All that is required is that an "officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."

*Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). A person has been seized within the meaning of the Fourth Amendment if in view of the surrounding circumstances a reasonable person would not feel free to leave. *Florida v. Royer*, 460 U.S. 491, 502–03, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983).[7]

Accordingly, this Court finds that in denying plaintiff's motion to suppress the search and seizure, the criminal court did not reach the issue whether Weber had probable cause to arrest plaintiff for obstructing legal process or for battery.

Plaintiff later filed a motion for acquittal, arguing that the State had not presented sufficient evidence for a jury to find plaintiff guilty of obstructing legal process or battery beyond a reasonable doubt. Defendants argue that in denying plaintiff's motion for acquittal, the criminal court impliedly found probable cause for plaintiff's arrest. Although the criminal court once again did not make a specific finding as to probable cause, in ruling on plaintiff's motion for acquittal, and the issue was not argued by either party, this Court believes that a determination that Weber had probable cause to arrest plaintiff on the charges for which he was tried necessarily underlay the judge's decision to put the issue of plaintiff's guilt before the jury.[8] Therefore, we hold that the criminal court determined that Weber had probable cause to arrest plaintiff for obstructing legal process and battery.

b. Not Necessary to the Prior Judgment

 Under Kansas collateral estoppel law, in order to be given preclusive effect, the issue previously litigated must have been determined *and necessary to support the judgment. Jackson Trak*, 242 Kan. at 690, 751 P.2d 122 (emphasis added). Even though the criminal court in the prior action impliedly determined that Weber had probable cause to arrest plaintiff, that determination was not necessary to support the judgment of acquittal. Therefore, plaintiff has not had a full and fair opportunity to litigate the issue. Federal courts must accord preclusive effect to issues decided previously by a state court if the courts of that state would apply issue preclusion and if the party against whom the earlier decision is rendered has had a full and fair opportunity to litigate the issue. *See Allen*, 449 U.S. at 95–96, 101 S.Ct. at 415; *Kaul v. Stephan*, 828 F.Supp. 1504, 1509 (D.Kan.1993). As in the *Kaul* case, plaintiff here was not convicted of the charges filed against him in state court. Before the jury's final judgment, any appeal of the state judge's ruling on the motion to suppress or on the motion to acquit would have been unripe; after final judgment was entered, any appeal on the issue of probable cause was rendered moot. Thus, plaintiff did not have a full and fair opportunity to litigate the probable cause issue, and collateral estoppel should not be applied. *See id.; see also Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir.1991) (no full and fair opportunity under Colorado law to litigate probable cause issue following acquittal); *but cf. Hubbert v. City of Moore, Okla.*, 923 F.2d 769, 773 (10th Cir.1991) (under Oklahoma law, determination of probable cause at preliminary hearing collaterally estopped acquitted party from relitigating same issue in later civil action).[9]

---

7. Nowhere in this proceeding or in the prior criminal proceeding have defendants argued that plaintiff was free to leave at any time during Weber's contact with him.

8. The criminal judge here, in ruling that a reasonable jury could find plaintiff guilty beyond a reasonable doubt, was faced with the exact same set of facts that he would have considered in deciding the issue of probable cause. Thus, his ruling on the motion to acquit necessarily encompassed the determination that Weber had probable cause to arrest plaintiff. Again, this is not to say that a denial of motion to acquit always contains a finding of probable cause. For example, it is possible to imagine a situation where an officer lacked probable cause at the time of the arrest, but where after-acquired evi-

dence supported the State's case enough to allow the issue of guilt to be determined by the jury. Therefore, the Court emphasizes that its holding in this case is limited to the facts presented.

9. Kansas law does not accord the same finality to a probable cause determination made at a preliminary hearing that Oklahoma law does. A finding of probable cause at a preliminary hearing is not a complete defense, but only prima facie evidence of probable cause which may be overcome by a preponderance of the evidence at a later trial on the issue. *Swanson v. Fields*, 814 F.Supp. 1007, 1014 (D.Kan.) (citing *Thompson v. General Finance Co., Inc.* 205 Kan. 76, 94–95, 468 P.2d 269 (1970)), *aff'd*, 13 F.3d 407 (10th Cir.1993).

Therefore, we hold that the criminal court's determination that Weber had probable cause to arrest plaintiff may not be given preclusive effect in this civil action.

### 3. Qualified Immunity

Defendants contend they are entitled to summary judgment on plaintiff's § 1983 claims on the grounds of qualified immunity. Defendants are entitled to this defense, even if there was no probable cause to arrest plaintiff for obstructing legal process or battery, if their conduct was objectively reasonable in light of clearly established law and the information defendants possessed at the time. *Martin v. Board of County Commissioners,* 909 F.2d 402, 405 (10th Cir.1990). The Tenth Circuit has set forth the proper method of analysis when the qualified immunity defense is raised on summary judgment:

> Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity.

*Id.* (citations omitted).

"There is no question but that plaintiff had a clearly established right against arrest and prosecution without probable cause"; the question is thus whether Weber's arrest of plaintiff was objectively reasonable or whether *genuine* issues of fact prevent the Court from making such a decision on summary judgment. *Elbrader v. Blevins,* 757 F.Supp. 1174, 1181 (D.Kan.1991). Again, taking plaintiff's properly supported allegations to be true for purposes of this motion, the Court cannot find as a matter of law that Weber's arrest of plaintiff was objectively reasonable.

#### a. Obstructing Legal Process

Obstructing legal process is defined as follows:

> Obstructing legal process or official duty is knowingly and willfully obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

K.S.A. § 21–3808(a). In order to constitute obstruction in the performance of an official duty, the person charged must substantially hinder the officer. *State v. Lee,* 242 Kan. 38, 43, 744 P.2d 845 (1987). Defendants allege that plaintiff had to be told three times to assume the search position, that he was uncooperative and belligerent, and that he shifted his feet during the search, making Weber's job more difficult. Plaintiff and witness Egidy testified that plaintiff was cooperative and compliant throughout his interaction with Weber, except when he took his wallet. Plaintiff and Weber both testified that plaintiff immediately returned the wallet to Weber upon request. Given plaintiff's version of the events leading to his arrest, this Court cannot find as a matter of law that plaintiff substantially hindered Weber's "investigation" and that Weber therefore had probable cause to make the arrest for obstruction of legal process. As a result, defendants are not entitled to summary judgment on the issue of qualified immunity.

#### b. Battery

Battery is defined as "... intentionally causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. § 21–3412(b). Again, the Court must take plaintiff's version of the facts to be true. Plaintiff alleges that not only did he not touch Weber, he also was not rude, insulting or angry in retrieving his wallet. Given the genuine factual dispute on this charge, the Court may not grant summary judgment in favor of defendants on this count.

B. Count II: Malicious Prosecution Claim Against Weber and Stover

In addition to their unavailing probable cause defense discussed above, defendants assert that the conduct plaintiff alleges is not "egregious" enough to rise to the level of a constitutional violation. Defendants also argue that § 1983 does not afford plaintiff a federal remedy on his malicious prosecution count because Kansas law provides an adequate remedy for that tort. Finally, defendants argue that the intervening decision of the Johnson County District Attorney to charge plaintiff shields defendants absolutely from liability for malicious prosecution.

■■■■ To establish a § 1983 claim for malicious prosecution, plaintiff must first make a showing on each of the elements of a state law claim for malicious prosecution. *Fillmore v. Ordonez*, 829 F.Supp. 1544, 1561 (D.Kan.1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994). The elements of a malicious prosecution claim in Kansas are that: (1) defendant initiated, continued, or procured civil or criminal proceedings against plaintiff; (2) in doing so, defendant acted without probable cause; (3) defendant acted with malice; (4) the proceeding terminated in favor of plaintiff; and (5) plaintiff sustained damages as a result.[10] *Id.* In addition to showing the state law elements, courts have also required plaintiffs to demonstrate a misuse of legal procedure so egregious as to subject the aggrieved person to a deprivation of "constitutional dimension" in order for their malicious prosecution claims to succeed as federal ones. *Id.; see also Anthony v. Baker*, 767 F.2d 657, 662–63 (10th Cir.1985); *Norton v. Liddel*, 620 F.2d 1375, 1378–79 (10th Cir. 1980).

In deciding cases in this area, courts have generally focused their analysis on whether the plaintiff has stated a violation of constitutional dimension under the principles of due process. However, the Supreme Court recently explained that it is the Fourth Amendment, and not substantive due process, which provides the source for a § 1983 action based on malicious prosecution. *See Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 813–14, 127 L.Ed.2d 114 (1994). It is unclear whether, viewing plaintiff's claim through the Fourth Amendment prism, he is required only to allege (as he has here) that Weber infringed his right to be free from unreasonable seizure or whether he must also demonstrate some additional factor which would raise his claim to the level of "egregiousness." Analyzing a malicious prosecution claim in light of *Albright*, the Second Circuit recently found the former to be true:

> [Plaintiff's] complaint states that, in causing him to be prosecuted, defendants violated [his] Fourth Amendment right to be free from unreasonable seizure of his person. In respect of pleading, *Albright* requires nothing more.

*Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995). In *Singer*, the district court had not addressed the factual question whether plaintiff's prosecution had deprived him of liberty to an extent sufficient to implicate the Fourth Amendment. *Id.* Indeed the record on appeal did not disclose whether plaintiff had been subjected to any restriction on travel or required to post bail. *Id.* at 117. Therefore, on appeal, the Second Circuit did not decide whether plaintiff had been "seized" under the Fourth Amendment.[11]

In *Albright*, plaintiff was released after posting bond, and he did not assert a violation of his Fourth Amendment rights. Therefore the *Albright* court, like the *Singer* court, did not decide whether plaintiff had been subjected to a Fourth Amendment seizure. Justice Ginsburg, however, concurring in *Albright*, concluded that a party is seized in a constitutional sense, even though not held in custody, for as long as the prosecution is pending:

> A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject ... to the condition that he seek formal

---

**10.** Other than the element of probable cause previously discussed, defendants' summary judgment motion does not explicitly challenge plaintiff's showing on any of the elements of his malicious prosecution claim; however, a challenge of the malice element is implicit in their argument.

**11.** In *Singer*, plaintiff had not demonstrated that defendants' conduct was otherwise tortious, *i.e.*, plaintiff had not made a showing on the common law elements of malicious prosecution, and the Second Circuit decided the case on that ground. *Id.* at 118.

permission from the court (at significant expense) before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense.... Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges.

*Albright,* —— U.S. at —— - ——, 114 S.Ct. at 815–16 (Ginsburg, J., concurring).[12]

■ In our case, plaintiff does not allege that he was held in custody after the baseless charges were filed; instead, he alleges that defendants' conduct deprived him of liberty by requiring him to spend time and money in preparing a legal defense and to stand trial for two days. Therefore, our case is not Justice Ginsburg's case. Our plaintiff does not claim that defendants' conduct confronted him with loss of employment prospects, restrictions on travel; or reputational harm. He complains only that the malicious filing of criminal charges subjected him to financial and emotional burdens in mounting a legal defense and required him to stand trial for two days.

Presumably every case of malicious prosecution entails consequences which are at least this burdensome. Yet Tenth Circuit authority teaches us that not every malicious prosecution claim deserves constitutional treatment under § 1983.[13] We must therefore decline Justice Ginsburg's suggestion that as long as a baseless criminal prosecution is pending, the defendant necessarily suffers a constitutional loss of liberty. If lack of probable cause to prosecute necessarily begets a "seizure" of constitutional dimensions, every malicious prosecution case is a federal one.[14] Moreover, while the Supreme Court has recognized that even pretrial *release* may be accompanied by conditions so burdensome as to effect a significant restraint of liberty, *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975), it has also commented that the Fourth Amendment does not require probable cause for the institution of criminal charges unless the defendant suffers restraints on liberty other than the condition that he or she appear for trial. *Id.* at 125 n. 26, 95 S.Ct. at 869 n. 26. Plaintiff here has not alleged that any "burdensome conditions that effect a significant restraint of liberty" resulted from his prosecution for the charges which were brought against him. Thus, we find as a matter of law that plaintiff suffered no deprivation of liberty sufficient to prevail on his claim for malicious prosecution under § 1983. Therefore, summary judgment in favor of defendants on this claim is warranted.[15]

12. Typically, damages for a false arrest claim cover the time of detention up until issuance of process or arraignment, and any damages sustained after that must be based on a malicious prosecution claim. W. Keeton, *et al., Prosser and Keeton on the Law of Torts,* § 119, at 888 (5th ed. 1984); *see also Singer,* 63 F.3d at 117. Justice Ginsburg would dispense with this "carving up" of the officers' conduct to fit the common law torts: she believes that "the constitutional tort [which] 42 U.S.C. § 1983 authorizes stands on its own, influenced by the substance, but not tied to the formal categories and procedures, of the common law"; accordingly, she would give the Fourth Amendment "full sway" and not force a plaintiff's claims to fit those molds. *Albright,* —— U.S. at —— n. 1, 114 S.Ct. at 815 n. 1 (Ginsburg, J., concurring).

13. In holding that malicious prosecution must be "egregious" to be actionable under § 1983, the Tenth Circuit proceeded under the now-discredited due process analysis. *See, e.g., Norton,* 620 F.2d at 1378; *Fillmore,* 829 F.Supp. at 1560–61; *Lyons v. Shead,* 1992 WL 363614, *6 (D.Kan.

1992). How this element may be refined or modified after *Albright* remains to be seen.

14. In fact, while probable cause is required for an arrest, it is not a constitutional prerequisite to a prosecutor's decision to charge. *Gerstein v. Pugh,* 420 U.S. 103, 125 n. 26, 95 S.Ct. 854, 869 n. 26, 43 L.Ed.2d 54 (1975).

15. Because we find that the conduct in which plaintiff alleges defendants engaged was not sufficient to warrant relief under § 1983, we need not address defendants' other two arguments—that an adequate state remedy precludes plaintiff from seeking a federal remedy for malicious prosecution and that the intervening decision of the prosecutor to charge plaintiff shields defendants from liability. We note, however, that defendants' latter defense is totally inappropriate in this summary judgment context; if, as plaintiff alleges, defendants supplied the prosecutor with misleading or false information on which he relied in deciding to proceed against plaintiff, it is of course not true that the prosecutor's decision

### C. Count III: Assault and Battery/Use of Excessive Force Against Weber

■ Plaintiff claims that Weber used excessive force when, after handcuffing plaintiff, Weber grabbed his face and pushed him backwards into the police car, causing plaintiff to hit his head on the door frame. Defendants summarily assert that such force does not rise to constitutional proportions. They reargue the facts (as Weber and Stover recall them) and conclude by citing *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989), for the proposition that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. This proposition is inapposite because (1) defendants deny that Weber used any force at all in effecting plaintiff's arrest and (2) the excessive force plaintiff alleges occurred after Weber effected the arrest.

■ The use of excessive force implicates a person's Fourth Amendment right to be free from unreasonable seizure. *See Swanson v. Fields,* 814 F.Supp. 1007, 1016 (D.Kan.1993) (citing *Graham,* 490 U.S. at 394, 109 S.Ct. at 1870). The issue is whether the amount of force used was "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. Such circumstances include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest. *Id.* at 396, 109 S.Ct. at 1872. Reasonableness must be determined from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In this case, the severity of the crime does not weigh heavily in consideration of the amount of force necessary, since the charges on which plaintiff was arrested and the facts underlying those charges were quite minor, even from Weber's perspective. Furthermore, even Weber's testimony comports with plaintiff's assertion that plaintiff was completely compliant from the time he was handcuffed. Therefore, defendants cannot argue that plaintiff posed an immediate threat or was resisting arrest at the time Weber allegedly pushed him into the police car.

Under plaintiff's version of the facts, a reasonable jury could find that no force was necessary to get plaintiff into the police car and that the force which Weber used was therefore excessive. However, that issue, like others in this case, is an issue of fact for the jury. A jury will have to weigh the relative credibility of the witnesses in order to determine what happened that night and whether it was reasonable. The Court finds that entering summary judgment on this issue would usurp the jury's function. Plaintiff's story and Weber's story directly contradict each other, and they cannot be reconciled without evaluating the truthfulness of each. This Court cannot engage in that task without encroaching upon the province of the jury. Therefore, summary judgment on the issue of Weber's use of excessive force is inappropriate.

### D. Counts IV and V: Conspiracy

■ Defendants argue that if plaintiff's first three counts fail, then the conspiracy count must also fail. They do not argue that the Court should grant summary judgment on the conspiracy counts even if the underlying § 1983 counts proceed to trial. Instead of offering additional legal argument on the conspiracy counts, defendants reassert their factual contention that Officers Weber and Stover submitted accurate reports regarding their encounter with plaintiff. Because plaintiff has raised issues of fact about the accuracy of the reports and the veracity of the police officers, summary judgment on plaintiff's claims that Weber and Stover conspired to deprive him of his constitutional rights by falsely arresting and maliciously prosecuting him is at this stage unwarranted.

**IT IS THEREFORE ORDERED** that *Defendants Weber and Stover's Motion for Summary Judgment* (Doc. # 34) be and hereby is overruled as to Counts I and IV

---

protects defendants from liability. *Robinson v. Maruffi,* 895 F.2d 649, 656 (10th Cir.1990). Since it remains a question of fact whether Weber and Stover provided false information to the prosecutor, it is obvious that summary judgment on this issue could not lie and that defense counsel was ill inclined to pursue this line of defense on a summary judgment motion.

(false arrest) and Count III (excessive force) and sustained as to Counts II and V (malicious prosecution).

### MEMORANDUM AND ORDER

This matter comes before the Court on *Defendants' Motion for Reconsideration* (Doc. # 64), filed November 1, 1995. In this motion, defendants request the Court to reconsider its denial of summary judgment in favor of defendants on Count IV of plaintiff's complaint, which alleges a conspiracy between defendants Weber and Stover to falsely arrest plaintiff.

The decision whether to grant a motion for reconsideration rests within the Court's discretion. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988). A court may appropriately grant a motion for reconsideration where: (1) the court has made a manifest error of fact or law; (2) there is newly discovered evidence; or (3) there has been a change in the law. *Renfro v. City of Emporia, Kan.,* 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991). A motion for reconsideration may not be used to raise new issues for the first time after entry of summary judgment; a party's failure to put forth its strongest arguments in the first instance does not entitle it to a second chance in the form of a motion to reconsider. *Id.; All West Pet Supply Co. v. Hill's Pet Prod. Div.,* 847 F.Supp. 858, 860 (D.Kan.1994).

Since defendants do not allege that they have discovered new evidence or that the relevant law has changed, their motion for reconsideration rests on the premise that the Court made a manifest error of fact or law in overruling their motion for summary judgment as to plaintiff's § 1985 claim. In urging reconsideration, defendants argue that the Court should have entered summary judgment because plaintiff has failed to present a sufficiently specific factual basis to support his conspiracy claim. Specifically, defendants assert that plaintiff has come forth with no evidence that in arresting him, defendants were motivated by a racial or other invidiously discriminatory animus, as is required to prevail on a claim under § 1985(3). *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

On summary judgment, defendants merely argued their version of the facts of this case—that their actions with respect to plaintiff were proper—and concluded that, if summary judgment was appropriate on the underlying § 1983 false arrest claim, then summary judgment should also lie on the § 1985 conspiracy claim. With respect to plaintiff's conspiracy claims, defendants' reply brief noted only that "[p]laintiff's counsel has failed to provide detailed allegations regarding the basis of theses [sic] claims." Nowhere in their summary judgment motion or in their reply brief did defendants address the elements of a claim under § 1985(3) or the requirement that plaintiff demonstrate defendants' actions were racially motivated. Nor did defendants cite a single case with respect to these issues in their summary judgment briefs. It is only in their motion for reconsideration that defendants raise for the first time this substantive argument for summary judgment on plaintiff's conspiracy count. Accordingly, defendants' motion for reconsideration is better characterized as an untimely, supplemental motion for summary judgment which interjects arguments that should have been presented earlier in the case. As such, the motion must be overruled.

**IT IS THEREFORE ORDERED** that *Defendants' Motion for Reconsideration* (Doc. # 64) be and hereby is overruled.